# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| **VIVIAN FULWOOD,**<br><br>*Plaintiff,*<br><br>v.<br><br>**WALMART, INC. and WAL-MART STORES EAST, LP,**<br><br>*Defendants.* | **CIVIL ACTION NO.**<br>**5:21-cv-00458-TES** |

## ORDER GRANTING MOTION TO SET ASIDE ENTRY OF DEFAULT
_____

Relying on Federal Rule of Civil Procedure 55(c), Defendants Walmart, Inc. and Wal-Mart Stores East, LP (collectively, "Walmart"), move the Court to set aside the Entry of Default issued by the Clerk of Court on April 8, 2022. After reviewing this case's procedural history from its proceedings with the Equal Employment Opportunity Commission until now, Walmart's Motion to Set Aside Entry of Default [Doc. 10] is due to be **GRANTED** for the reasons explained in the remainder of this Order.

## PROCEDURAL BACKGROUND

According to Plaintiff Vivian Fulwood, she filed a sex- and disability-based Charge of Discrimination with the EEOC on July 10, 2020, claiming that she was subject to discrimination and harassment because of her gender identity and disability. [Doc. 1, ¶ 109]; *see also* [Doc. 10, pp. 7–8]. After the EEOC sent a Notice of Charge of

Discrimination, Walmart—through its attorney working out of Littler Mendelson, P.C.'s Kansas City, Missouri, offices—apparently submitted a Position Statement in response. [Doc. 13, p. 2]. Then, on September 22, 2021, the EEOC issued its Dismissal and Notice of Rights—the "Right to Sue" letter—to Fulwood and sent a copy of it to Littler Mendelson in Kansas City. [*Id.*]; [Doc. 13-2].

Fulwood filed this lawsuit on December 21, 2021. [Doc. 1, p. 42]. The next day, her attorney sent a Notice of Lawsuit and Request to Waive Service of a Summons to the Littler Mendelson attorney who represented Walmart while Fulwood's Charge was pending before the EEOC. [Doc. 13, p. 2]. When the period for Walmart to waive service expired, Fulwood's attorney reached out to the Littler Mendelson attorney and learned that Littler Mendelson would not be representing Walmart in this case. [*Id.* at pp. 2–3]. With Littler Mendelson unable to accept or waive service for Fulwood's lawsuit, one of its employees advised Fulwood's attorney to serve Walmart's Registered Agent. [*Id.* at p. 3]. Fulwood did so on February 24, 2022.[1] [*Id.*].

The 21-day period for Walmart to file a responsive pleading came and went.[2] [Doc. 13, p. 3]. Fed. R. Civ. P. 12(a)(1)(A)(i). As a result, Fulwood filed a Motion for

---

[1] Fulwood served both Walmart, Inc. and Wal-Mart Stores East, LP, on that date. [Doc. 6]; [Doc. 7]; Doc. 10, p. 2 (Walmart's acknowledgment that Fulwood served it on February 24, 2022)].

[2] Based on a service date of February 24, 2022, Walmart had until March 17, 2022, to file a responsive pleading or a motion under Federal Rule of Civil Procedure 12(b).

2

Clerk's Entry of Default [Doc. 8] on April 6, 2022. [Doc. 13, p. 3]. Two days later, the Clerk of Court entered an Entry of Default on the record. [*Id.*].

Within days of being served, Walmart retained FordHarrison LLP to represent it in this case, and it sent Fulwood's service documents to a non-attorney employee at FordHarrison. [Doc. 13, p. 4]; [Doc. 10, p. 2]; [Doc. 15, p. 2]. However, because this employee had recently left FordHarrison and failed to forward Fulwood's service documents prior to departing, Walmart missed its deadline to respond to Fulwood's Complaint. [Doc. 13, pp. 4–5]; [Doc. 10, p. 2]. Banking on the position that the FordHarrison employee's "inadvertent oversight, mistake, and miscommunication" constitutes "good cause," Walmart asks the Court to set aside the Clerk's Entry of Default. [Doc. 10, p. 3].

## **LEGAL STANDARD**

First and foremost, defaults are viewed with disfavor, and there is a "strong policy of determining cases on their merits." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003). So, when a defaulting party can show "good cause," Rule 55(c) allows the Court to set aside an entry of default. *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996).

While "good cause" is undoubtedly a malleable and liberal standard to be applied to the facts of a specific case, it isn't so amorphous or loose that any excuse offered by a defaulting defendant will meet it. In other words, the "good cause"

standard has real substance. *Compania*, 88 F.3d at 951 (quoting *Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir. 1989)). That said, while there's no set formula to guide the standard, courts have developed some general guidelines that are commonly applied. *Id.* For example, courts consider "whether the default was culpable or willful, whether setting it aside would prejudice the adversary, . . . whether the defaulting party presents a meritorious defense[,]" and "whether the defaulting party acted promptly to correct the default." *Compania*, 88 F.3d at 951–52. All in all, in order to set aside the default, Walmart, as the defaulting party, needs to point out how the above-stated guidelines tilt in its favor while showing that some good cause, or reason, existed for its failure to timely respond to Fulwood's Complaint. *See E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990) (citations omitted).

## DISCUSSION

### A.    Whether the Default was Culpable or Willful

First, there's the consideration of whether the default was culpable or willful. *Compania*, 88 F.3d at 951. Walmart argues that its failure to timely respond to Fulwood's Complaint wasn't due to its actions or inactions, but was the result of a simple oversight and miscommunication by its retained law firm. [Doc. 10, p. 4]. Fulwood argues that this excuse simply can't bail Walmart out of default. Why? Based on how she puts Walmart's representations to the Court, Fulwood points out that if FordHarrison wasn't aware that Walmart had been served—because the former employee failed to forward

communication of service prior to leaving the law firm—how could it take the blame for Walmart's default? [Doc. 13, p. 7]. Sure, those that remained at FordHarrison may not have known that Walmart had been served, but that was because the employee failed to tell them. If it wasn't because the employee failed to tell them, then it was because FordHarrison didn't have proper mechanisms in place to make sure that the employee's work made it onto the desks of those who still worked there. In short, since Walmart forwarded notification of service to the employee, FordHarrison argues that all fingers point to it as for why Walmart fell into default. [Doc. 10, p. 2]. Fulwood disagrees.

Rather than view the shortcomings within FordHarrison's innerworkings related to changes with its employees as an oversight or miscommunication, Fulwood would have the Court chalk Walmart's default up to its own failure to take efforts to meet its obligations. [Doc. 13, pp. 4–5]. Her stance is that someone from Walmart should have ensured that FordHarrison did the job it was retained to do. [*Id.* at p. 8]. In an effort to keep the entry of default in place, Fulwood would have the Court say that Walmart, or someone from its internal legal department, should've micromanaged FordHarrison; stayed on top of it "to ensure that [it] was prepared to meet the deadline"; or, at the very least, confirmed that Fulwood's Complaint had been responded to properly. [*Id.*]. But, that is exactly why clients hire lawyers—to handle legal tasks. Clients shouldn't have to both pay lawyers and then spend their time making sure those lawyers perform the simplest of tasks.

While something under oath from FordHarrison would have made the Court's job much easier, its failure to make sure that its employees' workloads are redistributed and attended to when an employee leaves the law firm is FordHarrison's oversight, not Walmart's. Thus, the first guideline tilts in Walmart's favor to set aside default.

**B.      Whether Setting Default Aside Would Prejudice the Adversary**

Fulwood is of the impression that she will (continue to) be prejudiced if default is set aside. What she categorizes as prejudice, however, are the normal ins and outs that plaintiffs face throughout civil litigation. [*Id.* at p. 9]. The fact that a plaintiff may lose out on a potential windfall simply isn't legal prejudice. *Cf. Sobkowski v. Wyeth, Inc.*, No. 5:04 CV 06–OC–10GRJ, 2004 WL 3569703, at *2 (M.D. Fla. June 4, 2004) (noting that a "quick resolution to the case" cannot be the benchmark for determining whether there is prejudice in setting aside a default). On top of that, Fulwood states that, after discovery, she may even consider filing a dispositive motion. [Doc. 13, p. 9]. Allowing the parties to engage in discovery and argue their respective cases through normal motions practice falls directly into Circuit preference for determining cases on their merits. *Worldwide Web Sys.*, 328 F.3d at 1295. Thus, the second guideline also tilts in Walmart's favor to set aside default.

**C.      Whether the Defaulting Party Presents a Meritorious Defense**

Next, as the defaulting party, Walmart must present meritorious defenses to Fulwood's claims in order for the entry of default to be set aside. *Compania*, 88 F.3d at

6

951. In its attempt to meet this guideline, Walmart contends that it immediately addressed the issues Fulwood complained of, and it states that she was fired for legitimate, non-discriminatory reasons completely removed from issues pertaining to gender identity and disability. [Doc. 10, pp. 7–9]. Aside from its legitimate non-discriminatory reasons for Fulwood's termination—attendance and punctuality—Walmart mainly plans to assert the *Faragher-Ellerth* defense, relying on how quickly it took steps to rectify the sex- and disability-based issues Fulwood claims she was having. [*Id.* at p. 9 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998))].

Fulwood, however, claims that Walmart hasn't met its burden when it comes to meeting this third guideline. [Doc. 13, p. 10]. She argues that Walmart "cannot merely rely on . . . general denials and conclusory statements." [*Id.* (quoting *In re Durango Georgia Paper Co.*, 314 B.R. 881, 884 (Bankr. S.D. Ga. 2004))]. While a party seeking to set aside a *default judgment* cannot rest on "general denials" and must affirmatively show a defense that is likely to be successful, when it comes to setting *entries of default*, defaulting parties face an exceedingly light burden. *See, e.g., U.S. Bank N.A. as Trustee for RMAC Trust, Series 2016-CTT v. Son Van Doung*, No. 1:18-CV-3594-LMM-JSA, 2019 WL 9048962, at *7 (N.D. Ga. Oct. 23, 2019) (citations omitted); *see also Worldwide Web Sys.*, 328 F.3d at 1296.

Unlike attempts to set aside a *default judgment*, a party seeking only to set aside an *entry of default* need only show a "hint of a suggestion of a meritorious defense."

7

*Retina-X Studios, LLC v. ADVAA, LLC*, 303 F.R.D. 642, 657 (M.D. Fla. 2014) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 n.4 (5th Cir. 1979)); *accord Mohamad v. Rajoub*, 634 F.3d 604, 606 (D.C. Cir. 2011) ("allegations are meritorious if they contain even a hint of a suggestion which, proven at trial, would constitute a complete defense"). "Furthermore, on a request to set aside entry of default[,] the existence of a 'meritorious defense' does not depend on the likelihood of success of the defense." *Son Van Doung*, 2019 WL 9048962, at *7 (citing *Retina-X Studios*, 303 F.R.D. at 657).

Walmart, albeit barely, hinted at the defenses it plans to present against Fulwood's claims, but because it's only seeking to set aside an entry of default, that's all it has to do. *See, e.g.*, [Doc. 10, pp. 7–9]; [Doc. 15, pp. 3–4]. Thus, the third guideline—based on its exceedingly low hurdle for setting aside entries of default (as opposed to setting aside default judgments)—also tilts in favor of setting aside default.

### D.     Whether Walmart Acted Promptly to Correct the Default

Finally, there's the consideration of "whether the defaulting party acted promptly to correct the default." *Compania*, 88 F.3d at 951–52. Recalling the procedural history presented above, there's no question that Walmart acted promptly to fix its default.[3] A week after the Clerk of Court placed the Entry of Default on the record on

---

[3] The Court pauses to note its appreciation as all counsel have acted with commendable professionalism in dealing with Walmart's default. The Court thanks them for their efforts to resolve their disagreement and their example of disagreeing amicably. Well done.

April 8, 2022, Walmart moved to set it aside. Thus, this fourth guideline tilts in

Walmart's favor to set default aside.

## CONCLUSION

Based on the foregoing, Walmart's Motion to Set Aside Entry of Default [Doc. 10]

is **GRANTED**. Walmart shall have until June 24, 2022, to respond to Fulwood's

Complaint.

    **SO ORDERED**, this 2nd day of June, 2022.

                                       S/ Tilman E. Self, III
                                       **TILMAN E. SELF, III, JUDGE**
                                       **UNITED STATES DISTRICT COURT**